UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
     v.                       )        CRIMINAL NO. 13-10165-PBS
                              )
ARTIS COOPER,                 )
                              )
          Defendant.          )
                              )
_____)
```

**MEMORANDUM AND ORDER**

March 5, 2013

SARIS, Chief Judge.

**I. INTRODUCTION**

Defendant Artis Cooper, charged with drug trafficking, moves to suppress evidence obtained from searches of his residence and his motor vehicle on the ground that the searches violated his rights under the Fourth Amendment.

After an evidentiary hearing at which Special Agent Daniel Campbell, Special Agent Lisa Rudnicki, and Ms. Melody Pearson testified, the motion is **DENIED**.

**II. FINDINGS OF FACT**

The following facts are based on information drawn from live testimony, the affidavit submitted in support of the search warrant for the defendant's residence, and several Reports of Investigation by the United States Bureau of Alcohol, Tobacco,

1

Firearms, and Explosives ("ATF"), which were entered into evidence.

In March 2013, the ATF received information from a cooperating witness that Artis Cooper and his cousin Jerry Cooper had sold the cooperating witness crack cocaine on several occasions. The cooperating witness identified Artis and Jerry Cooper by photograph and nickname, stating that Artis Cooper was also called "Junior," and Jerry Cooper was also called "Baby." The cooperating witness also provided biographical information about Artis and Jerry, describing their residences and criminal histories. Law enforcement subsequently corroborated this information. The cooperating witness told ATF agents that Artis Cooper supplied drugs to Jerry, who then acted as a middleman by selling them to others.

Prior to the investigation into Artis and Jerry Cooper, the ATF had never worked with this particular cooperating witness. During March and April 2013, the ATF used the cooperating witness to complete seven controlled purchases of crack cocaine from Artis and Jerry Cooper. Each of the controlled purchases took place under physical surveillance by ATF agents and was audio recorded. All but the March 18 purchase were also video recorded.

**A. Controlled Purchase - March 18**

At the direction of ATF agents, the cooperating witness called Jerry Cooper to arrange a purchase of crack cocaine. In a

2

series of recorded phone calls, Jerry told the cooperating witness that Jerry did not have any crack cocaine, but that a third party did, and that Jerry would contact him. Jerry said, "Let me call him one more time because he ain't answer his cell," and, "He ain't answering me, he must be busy." The cooperating witness asked Jerry if he had "anything," referring to crack cocaine, to which Jerry replied that he had "the little things." The cooperating witness asked if Jerry had a "ball," referring to 3.5 grams of crack cocaine. Jerry said that he did not. The cooperating witness subsequently asked for "Junior's" phone number, which Jerry provided.

The cooperating witness called the number for "Junior" and left a voicemail message. Later, Artis Cooper called the cooperating witness and said that he was not at home. The cooperating witness asked when he would return, stating that the cooperating witness needed to get something, referring to crack cocaine. Artis said that he would call the cooperating witness when he was on his way home, and declined to meet at another location, saying, "I don't travel like that. That's one thing I do not do." After a series of back and forth phone calls during which Artis and the cooperating witness each missed each other's calls, they ultimately reached one another. Artis said that he would call the cooperating witness when he finished working.

The cooperating witness spoke with Jerry on the phone, and asked him, "You got what I am looking for?" Jerry responded, "I got to go get it," and later called back, saying, "He said he's going to hit me when he gets back. [ . . .] I am going to manage it for you." The cooperating witness later met with Jerry and bought crack cocaine from him.

## B. Controlled Purchase - April 1

Again at the direction of ATF agents, the cooperating witness contacted Jerry to arrange the purchase of crack cocaine. Jerry asked the cooperating witness to pick him up at his residence, 8 Dewey Street. Jerry said he needed to go to "Junior's." After picking Jerry up, the cooperating witness and Jerry drove to Artis Cooper's residence at 4 Westminster Avenue. In the car, outside of 4 Westminster Avenue, the cooperating witness gave Jerry $1,500 as payment for crack cocaine. Jerry left the car and entered the residence. A short time later, Jerry exited the residence accompanied by Artis. Artis left the area in a separate car. Jerry got back into the cooperating witness's car and gave him approximately 28 grams of crack cocaine.

## C. Controlled Purchase - April 4

As before, the cooperating witness contacted Jerry to buy drugs. The cooperating witness picked Jerry up at Jerry's residence, and then drove to 4 Westminster Avenue. Artis, who arrived at the house nearly simultaneously, exited his car and

4

stood on the porch. The cooperating witness gave Jerry $800 in
the car. Jerry exited the car, spoke with Artis on the porch of 4
Westminster, and then both went into the house. Roughly twenty
minutes later, Jerry exited the house, re-entered the cooperating
witness's car, and handed the cooperating witness approximately
14 grams of crack cocaine.

**D. Controlled Purchase - April 30**

The cooperating witness contacted Jerry to arrange a
transaction, and the two had several recorded telephone
conversations throughout the day. After the cooperating witness
picked up Jerry at Jerry's residence, Jerry stated, referring to
a third party, "I am still waiting for him to call. . . . I guess
he is going to pick it up right now. . . . Every time he went for
it, he kept losing, kept losing weight." Jerry re-entered his
residence and came out thirty minutes later. He and the
cooperating witness then drove to 4 Westminster Avenue in the
cooperating witness's car.

Upon arrival, Jerry said to the cooperating witness, "He
said 1550, baby." The cooperating witness replied, "I ain't got
no fifty dollars, I got fifteen." Jerry stated, "That what he
said." The cooperating witness gave Jerry $1,500. Jerry exited
the car, and walked toward the house. At approximately this time,
Artis arrived at 4 Westminster Avenue. Artis and Jerry entered
the house together, and exited approximately thirty minutes

later. Jerry went back to the cooperating witness's car, entered, and gave him 29 grams of crack cocaine, saying, "He said don't forget his fifty cent." The cooperating witness then drove Jerry to his mother's home. Footage from a camera placed inside the cooperating witness's car showed that, en route, Jerry packaged additional crack cocaine for distribution. Jerry also made or received a phone call, during which he told the other person on the call, "Have that money ready."

**E. The Search Warrant**

Based on the series of controlled purchases involving Artis and Jerry Cooper, ATF Special Agent Brian Higgins applied for and received search warrants for three locations that the ATF believed Jerry and Artis used for crack cocaine processing and distribution. 4 Westminster Avenue was one of the locations. The affidavit submitted in support of the warrant application described Agent Higgins' history, training, and experience as an ATF agent, including training specific to drug investigations and his actual participation in such investigations. The affidavit also described the controlled purchases that had been conducted via the cooperating witness, the recorded telephone calls, and the cooperating witness's assertions about the structure of the Cooper drug organization and his own history with Jerry and Artis.

With regard to 4 Westminster Avenue in particular, the

affidavit noted the three occasions upon which Jerry entered the
residence with the cooperating witness's payment and exited the
residence with crack cocaine. Further, the affidavit noted that
Jerry referred to 4 Westminster Avenue as "Junior's house," and
that Artis Cooper was present during each controlled buy that
took place at the residence.

**F. The Raid - May 20**

Agents planned to execute the search warrant obtained by
Agent Higgins on May 20. On that day, the cooperating witness, at
the agents' direction, again contacted Jerry to arrange a
purchase of crack cocaine. Jerry and the cooperating witness
communicated throughout the day. Jerry stated that "he,"
referring to a third party, needed to "go to the lab," later
clarifying that he meant "the kitchen," before Jerry could
complete the transaction.

That evening, at approximately 8:15 p.m., Jerry arrived at 4
Westminster Ave in a taxi. Artis, accompanied by then-girlfriend
Melody Pearson, arrived at roughly the same time in a rented
Nissan Altima. Both Jerry and Artis were parked on the street,
directly across from the house. Agents approached both cars and
removed all occupants. Artis was handcuffed and seated on the
curb approximately two car-lengths down from the back of the car.
Pearson was seated on the curb. After Jerry, Artis, and Melody
were each secured, agents informed them that they intended to

search 4 Westminster Avenue. Agents then proceeded to execute the
search warrant. Inside the residence, ATF agents recovered
approximately $97,480 in cash, along with drug distribution
paraphernalia such as digital scales, razor blades, gloves, a
sifter, a respirator, cutting agent, and packaging materials.
Agents also found crack cocaine hidden in various locations
throughout Artis's bedroom.

Roughly an hour after officers stopped the cars, Agent Lisa
Rudnicki approached Artis' car to retrieve Pearson's purse and a
shopping bag of food that Pearson stated was in the back seat of
the car. While in the car, Agent Rudnicki saw a non-transparent
plastic bag on the floor in front of the passenger seat. She
opened the bag to see if it contained illegal drugs, and found
crack cocaine packaged for distribution. The bag was removed from
the car and ultimately found to contain 286 grams of crack
cocaine. Artis, Jerry, and Pearson were subsequently arrested.
Artis Cooper was booked at 11:19 p.m. on the same evening, and
charged with conspiracy to possess with intent to distribute and
to distribute 280 grams or more of crack cocaine, in violation of
21 U.S.C. § 846.

### III. CONCLUSIONS OF LAW

**A. Search of 4 Westminster Avenue**

The defendant argues that the search warrant of 4
Westminster Avenue was not supported by probable cause. A search

8

warrant is valid when it is supported by an affidavit that demonstrates "probable cause to believe that 1) a crime has been committed, and 2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2010). To evaluate the existence of probable cause, courts consider the "totality of the circumstances" stated in the affidavit. U.S. v. Khounsavanh, 11 F.3d 279, 283 (1st Cir. 1997) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Probable cause "need not be tantamount to proof beyond a reasonable doubt," United States v. Aguirre, 839 F.2d 854, 857 (1st Cir.), but rather the affidavit must show "a fair probability that contraband or evidence of a crime will be found in a particular place." Khounsavanh, 113 F.3d at 283.

After evaluating the affidavit of Special Agent Brian Higgins, I find that it establishes probable cause for the search of 4 Westminster Avenue. The affidavit described the cooperating witness's first-hand knowledge of drug trafficking activities by Jerry and Artis Cooper. The cooperating witness stated that he had known Jerry and Artis Cooper for several years, and had previously purchased crack cocaine from them outside the warrant's target locations. The cooperating witness also correctly identified Jerry and Artis Cooper by photograph and nickname. The affidavit attested that ATF officers independently

corroborated the cooperating witness's information, which
established the individual's reliability. Agent Higgins's
affidavit went on to describe the ATF's ongoing investigation
into the Coopers' illegal activity, which included the completion
of several controlled crack cocaine purchases. During three of
the purchases, each of which was surveilled and one of which was
video recorded, Jerry Cooper entered 4 Westminster Avenue with
the cooperating witness's payment for crack cocaine, and later
exited the house with crack cocaine.

Probable cause may be "demonstrated through reasonable
inferences," U.S. v. Santiago, 389 F. Supp. 2d 124, 127 (D. Mass.
2005). Jerry Cooper's pattern of conduct with regard to 4
Westminster Avenue provided probable cause to believe that crack
cocaine was being stored inside the house.

The defendant argues that the information in the affidavit
did not sufficiently link him to the drug activity taking place
at his residence, as it was Jerry Cooper – not Artis – who
personally managed each drug transaction. As demonstrated below,
there is probable cause to believe Artis was involved in drug
trafficking. But even if it were true that the link was
insufficient, defendant's assertion that the failure to
demonstrate a "nexus between a defendant's home and the
defendant's drug activity" invalidates the warrant is simply
incorrect. The nexus need only be established between the

10

residence and criminal activity, not between criminal activity
and the particular defendant. Higgins's affidavit satisfies both
the commission and nexus elements of the probable cause standard.

## B. Search of Artis Cooper's Car

To justify the warrantless search of an automobile, the
government must demonstrate that the search falls within one of
the recognized exceptions to the Fourth Amendment's warrant
requirement. See Mincey v. Arizona, 437 U.S. 385, 390 (1978).
Here, the government argues that the search of Artis Cooper's
Altima comes under the "automobile exception," which allows for a
warrantless search where an officer has "probable cause to
believe that either a vehicle or a container within a vehicle
contains contraband, evidence of crime, or other matter that may
lawfully be seized." United States v. Infante-Ruiz, 13 F.3d 498,
502 (1st Cir. 1994). I find that agents had probable cause to
search Artis Cooper's car and the plastic bag found on the
passenger side floor.

Prior to the day of the raid, each of the controlled
purchases involving 4 Westminster Avenue indicated that Jerry
Cooper obtained crack cocaine from the residence. Each time the
cooperating witness and Jerry drove to 4 Westminster for a
transaction, Artis was either already present or would arrive at
around the same time, all before Jerry retrieved the drugs from

inside the house and completed the sale. Based on this pattern, officers could reasonably believe that Artis was responsible for providing drugs at the location.

Conversations between Jerry and the cooperating witness support the conclusion that on the day of the raid Artis was transporting drugs to the residence. On April 30, before driving to 4 Westminster and completing the drug sale, Jerry told the cooperating witness that "he," a third party, was going to "pick up" the drugs that the cooperating witness sought to purchase. On May 20, the day of the raid, Jerry again referred to a third party, saying that "he" needed to go to the "lab" or "kitchen" before Jerry could complete the sale. Law enforcement officers, based on their experience and training, reasonably believed the terms "lab" and "kitchen" to be references to a location where crack cocaine was processed for distribution. On both April 30 and May 20, after these references to a third party who would pick up and then provide crack cocaine to Jerry, Jerry and the cooperating witness traveled to Artis's residence at 4 Westminster Avenue. On May 20, Artis arrived at nearly the same time as Jerry and the cooperating witness, exhibiting the same pattern of conduct that on prior occasions ultimately resulted in a completed drug sale. Given the totality of the circumstances, at the time of the search there existed a reasonable probability that officers would find drugs in Artis Cooper's car. Probable

cause requires no more, as it is a standard that falls "well short of certainty." <u>United States v. Polanco</u>, 634 F.3 d 39, 43 (1st Cir. 2011). The Court finds that the search of Artis Cooper's Altima was lawful under the automobile exception to the warrant requirement.

<strong><u>ORDER</u></strong>

The Court **<u>DENIES</u>** Defendant's Motion to Suppress.

 /s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge